**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

MICHAEL T., et al.,

                     Plaintiffs,

v.                                       CIVIL ACTION NO.  2:15-cv-09655

BILL J. CROUCH, in his official capacity
as Secretary of the WEST VIRGINIA
DEPARTMENT OF HEALTH AND HUMAN
RESOURCES,

                     Defendant.

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiffs' Motion to Extend Preliminary Injunctive Relief to Class Members ("Motion to Extend").  (ECF No. 140.)  For the reasons stated herein, the Court **DENIES WITHOUT PREJUDICE** the motion.

On September 13, 2016, this Court granted Plaintiffs' request for a preliminary injunction and ordered Defendant "to reinstate the named Plaintiffs' individualized I/DD Waiver Program budgets to the amounts Plaintiffs received in 2014, but only for those Plaintiffs that received a reduction in their individualized budgets after 2014."  (ECF No. 122 at 32.)  The Court thereafter granted Plaintiffs' Motion for Class Certification on September 30, 2016.  (ECF No. 136.)  On October 28, 2016, the parties appeared before the Court for a settlement conference, and they continued negotiations for the next several months.  On April 27, 2017, the parties informed the Court that while progress had been made toward reaching a resolution as to Count II of Plaintiffs'

1

Amended Complaint, the parties "concluded that they [were] unable to settle Counts I, III, and IV." (*See* ECF No. 152.) The Court held a telephonic status conference on April 28, 2017, and subsequently ordered Defendant to respond to the Motion to Extend by May 12, 2017, and Plaintiffs to file any reply one week later. (ECF Nos. 153, 154.)

The arguments within Plaintiffs' Motion to Extend rely on the West Virginia Department of Health and Human Resources' ("DHHR") perpetual use of the old authorization system. (*See* ECF No. 141 at 3–11.) Similarly, the affidavit and three declarations attached to the motion— explaining hardships suffered by certain I/DD Waiver Program participants—are premised on the effects of the old authorization system. (*See* ECF Nos. 140-1, 140-2, 140-3, 140-4.) Plaintiffs argue that because the 4,600-plus unnamed class members receive annual budgets calculated under a process that the Court previously criticized, they are entitled to the same preliminary relief as the named Plaintiffs. (*See* ECF No. 158 at 1–6 ("That is especially true given it appears defendant will not pursue its plan unless this Court first gives an advisory opinion finding [that] this speculative, non-legislative change satisfies the Constitution, the Medicaid Act, the ADA, and the Rehab Act.").) Plaintiffs emphasize that at the time their Motion to Extend was filed, "the actual parameters of any new process ha[d] not been established . . . ." (*See id.* at 7–8 (stating that DHHR's reliance on the implementation of a new system "is simply too speculative to present a ripe, justiciable issue").) Thus, Plaintiffs argue that for the same reasons that injunctive relief was appropriate for the named Plaintiffs, the *Winter* factors support extending preliminary relief to the entire class. (*See id.* at 8–14.)

Defendant argues in his response to the motion that Plaintiffs did not demonstrate the necessity of extending preliminary relief to all 4,634 members of the class. (*See* ECF No. 157.) Defendant avers that Plaintiffs are unlikely to succeed on the merits of their due process claim in

light of the new service authorization system developed by DHHR. (*See id.* at 4–5.) After arguing that Plaintiffs failed to show that the class as a whole would suffer irreparable harm, Defendant provides that "[r]eturning thousands of waiver members to their 2014 service authorization levels would cost taxpayers tens of millions of dollars" and "would threaten the State's ability to continue to offer 4,634 slots for enrollment in the I/DD Waiver [Program]," particularly in light of West Virginia's worsening budget crisis. (*See id.* at 5–10, 11–12.) Finally, Defendant states that extending the preliminary injunction to the entire class would prevent DHHR from adding fifty spots to the I/DD Waiver Program in fiscal year 2018 as originally planned and would prevent DHHR's ability to implement the new service authorization system. (*See id.* at 13–16 ("DHHR does not have the administrative or financial resources to *both* restore thousands of waiver members to their service levels from three years ago (2014) *and* implement the new service authorization system it has developed." (emphasis in original)).)

During the briefing period for the Motion to Extend, Defendant filed a Motion to Vacate or Modify Preliminary Injunction Order ("Motion to Vacate or Modify"). (ECF No. 155.) Attached to the motion is an exhibit detailing a "new service authorization system" developed by DHHR that Defendant believes satisfies the Court's concerns expressed when granting the preliminary injunction. (*See* ECF No. 155-1; ECF No. 156 at 6–12.) Recently, on September 15, 2017, Defendant's counsel submitted a letter-form status report to the Court informing it that DHHR is "mov[ing] ahead with implementation of this new system . . . ." (ECF No. 168.) DHHR provides the following timeline by which it will abide:

| Date | Action |
| --- | --- |
| November 15, 2017 | DHHR issues notice to the public for changes to the I/DD Waiver Policy Manual to implement the |

|  |  |
|---|---|
|  | proposed new service authorization system |
| December 15, 2017 - January 31, 2018 | DHHR reviews and considers public comments |
| February 1, 2018 | DHHR finalizes and publishes changes to the I/DD Waiver Program Manual |
| February 1 - March 31, 2018 | DHHR works with KEPRO to put in place practices and procedures to implement the new service authorization system |
| April 1, 2018 | DHHR begins evaluating waiver members and calculating their service authorization levels pursuant to the new system, based on anchor dates |
| 90 days after evaluation | Waiver members begin receiving services pursuant to service authorization levels developed under the new system |
| July 1, 2018 | DHHR adds 50 new slots to the I/DD Waiver Program |

(*Id.* at 1–2.)  DHHR recognizes its responsibility to continue providing the named Plaintiffs their 2014 service authorization levels, if necessary, pursuant to the current injunction.  (*Id.* at 2.)

Defendant's latest status report demonstrates that the new authorization system will soon cover the unnamed members of the class, which sullies the arguments in Plaintiffs' Motion to Extend as they are premised on the assumption that the old authorization system will continue to apply to the class members.  All class members will begin switching over to the new authorization system in just over six months, and the Court finds that it would be inequitable to order DHHR to provide up to 4,634 members with their service authorization levels from 2014 while the agency simultaneously prepares to implement a new authorization system that Defendant argues

ameliorates the Court's concerns with the old system. In fact, Defendant states that doing both is impossible. (*See* ECF No. 157 at 15–16.) Further, contrary to the analysis provided in the previous memorandum opinion and order issuing the preliminary injunction, (*see* ECF No. 122 at 14–24), the Court is uncertain that Plaintiffs remain likely to succeed on their due process claim in light of the changes incorporated in the new authorization system outlined in Exhibit One to Defendant's Motion to Vacate or Modify. (*See* ECF No. 155-1.) Regarding Plaintiffs' likelihood of success on the merits as to the new authorization system, only the due process claim from Plaintiffs' Amended Complaint is fully briefed by the parties in the Motion to Vacate or Modify. (*See* ECF Nos. 156, 163, 167.) Because Defendant has indicated DHHR's intention to move forward with implementation of the new authorization system, the Court anticipates another round of briefing from the parties and, for that reason, declines to resolve the Motion to Vacate or Modify at this time.

For these reasons, the Court **DENIES WITHOUT PREJUDICE** Plaintiffs' Motion to Extend. (ECF No. 140.)

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:     September 20, 2017

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE